**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE COMPUWARE                                                       Civil No.  02-73793
SECURITIES LITIGATION                                    Hon. Anna Diggs Taylor
_____/

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
DISMISS AND GRANTING MOTION FOR SUMMARY JUDGMENT,
DENYING MOTION TO INTERVENE AND DENYING
MOTION FOR CLASS CERTIFICATION**

**I.**
*Introduction*

Before the court is Compuware's ("Defendants") Renewed Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c) and Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, on Plaintiff Houston Municipal Employees Pension System's ("HMEPS"), consolidated Amended Complaint[1] ("complaint"); and Plaintiff Charles Butts' ("Butts") Motions to Intervene as Class Representative and for Class Certification.  This memorandum constitutes the court's findings of fact and conclusions of law.  For the reasons stated herein, Defendants' motions for Judgment on the Pleadings and Summary Judgment are Granted.  Butts' Motions for Intervention and for Class Certification are Denied as Moot.

**II.**
*Statement of Facts*

This action was initially filed on behalf of a class of investors who purchased Compuware

---

[1] This court entered an order consolidating *Dinallo v. Compuware Corp., Joseph A. Nathan, Henry A. Jallos and Laura L. Fournier* (02-73793); and, *Rosen v. Compuware Corp., Joseph A. Nathan, Henry A. Jallos and Laura L. Fournier* (02-74073), on March 6, 2003.  The consolidated complaint against Compuware also named Joseph A. Nathan, but substituted Peter Karmanos, Jr., and Elizabeth A. Chappell for Henry Jallos and Laura Fournier, as individual Defendants.

common stock during the period from June 26, 1999 to April 3, 2002 (the "Class Period"). Compuware provides computer software and consulting services, primarily for use with mainframe and client/server systems, including those of International Business Machines ("IBM"), Inc.

HMEPS' complaint alleges that throughout the Class Period, Defendants issued a series of false and misleading statements, which were designed to conceal from the investing public serious problems with Defendants' business relationship with IBM.[2]  Specifically, Defendants knew, but failed to disclose to investors that IBM had long been dissatisfied with Defendants' pricing of software products and that as a result, IBM was developing its own line of competing software products and, in fact, became a significant competitor of Defendants.  HMEPS contends that on April 3, 2002, Defendants' revealed by press release that a revenue shortfall would require Defendants to take restructuring and goodwill impairment charges in excess of $365 million, sending Defendants' share prices spiraling down more than 25% in one day.

**Procedural History**

HMEPS filed a complaint alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.  Defendants moved to dismiss the complaint, claiming, *inter alia*, that HMEPS had failed to allege "loss causation."  By Memorandum and Order dated February 3, 2004, this court denied Defendants' Motion to Dismiss, rejecting Defendants' argument that the complaint failed to allege loss causation.  *In re Compuware Sec. Litig.*, 301 F. Supp. 2d 672, 690-91 (E.D. Mich. 2004).

HMEPS then filed a Motion for Class Certification seeking an Order certifying the class and

---

[2] *See In re Compuware Sec. Litig.*, 301 F. Supp. 2d 672, 676-80 (E.D. Mich. 2004), for a summary of the dispute between Defendants and IBM.  The dispute between Defendants and IBM was resolved and dismissed in March of 2005.

appointing HMEPS as the class representative. The court denied HMEPS' Motion, finding that because HMEPS had sold all of its Compuware stock well prior to Defendants' disclosure, HMEPS' claims or defenses were not typical of the claims or defenses of the class, and that, therefore, HMEPS could not adequately protect the interest of the class.

Subsequently, Butts moved to intervene and serve as class representative and moved for class certification. Butts was represented by the same counsel as had been HMEPS. He contends that he satisfies the elements for intervention and that his serving as class representative would not cause severe prejudice to the Defendants. Further, he contends that he purchased and held Defendants' stock throughout the Class Period, including at the time of Defendants' disclosure, and, therefore, class certification is appropriate because he does not suffer the same failing as HMEPS' motion for class certification.

Defendants then filed a second Motion for Judgment on the Pleadings and for Summary Judgment against HMEPS, moving to dismiss the complaint for failing to adequately plead loss causation. In its motions, Defendants contend, pursuant to the Supreme Court's recent holding in *Dura Pharmaceuticals, Inc., v. Broudo*, 125 S.Ct. 1627; 161 L.Ed.2d 577 (2005), that HMEPS may not establish loss causation by merely alleging that the security price was inflated at the time of its purchase because of a misrepresentation. Rather, the complaint must plead that the Defendants' misrepresentation directly and proximately caused its economic loss. Therefore, HMEPS' mere allegation that class members "would not have purchased or otherwise acquired their Compuware common stock, or if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid" (Compl. ¶ 89), is insufficient as a matter of law.

3

Further, the Defendants contend that summary judgment should be granted against HMEPS because it is undisputed that HMEPS did not own Defendants' stock at the time the alleged truth began to leak out. Defendants argue, assuming *arguendo* that they failed to properly disclose the competition with IBM, that the alleged fraud caused no loss to HMEPS since it had already sold all of its stock in Defendants at the time the corrective disclosure was made. The case, they argue, therefore falls sqarely within the Supreme Court's recent ruling in *Dura, supra*.

### III.
*Standard of Review*

**A.     Fed. R. Civ. P. 12(c)**

In ruling on a motion to dismiss, the court "must construe the complaint in a light most favorable to the plaintiff," *Helwig v. Vencor, Inc*. 251 F.3d 540, 553 (6th Cir. 2001) and accept as true "well pleaded facts" set forth therein. *In re Comshare, Inc., Sec. Litig.*, 183 F.3d 542, 547 (6th Cir. 1999). The court is not, however, bound to accept as true unwarranted factual inferences or legal conclusions unsupported by well-pleaded facts. *See Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

**B.     Fed. R. Civ. P. 56**

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*. In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**C.     Federal Securities Laws**

Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 proscribe "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security." 15 U.S.C. §78j(b), 78t(a); 17 C.F.R. §240.10b-5. Securities fraud allegations, like all fraud allegations, must be stated with particularity in compliance with Rule 9(b) of the Federal Rules of Civil Procedure. In cases involving publicly traded securities and purchases or sales in public securities markets, the action's basic elements include: (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation" (nonconclusively presuming that the price of a publicly traded share reflects a material misrepresentation and that plaintiffs have relied upon that misrepresentation as long as they would not have bought the share in its absence); (5) economic loss; and (6) "loss causation," i.e., a casual connection between the material misrepresentation and the loss. *Dura,* 125 S.Ct. at 1631. Here, Defendants move to dismiss because the complaint's allegations are inadequate with respect to the loss causation element.

**IV.**
*Analysis*

**A.     LOSS CAUSATION**

Plaintiffs in securities fraud cases have long been required to prove "loss causation," which means that the plaintiff must allege economic loss, and that the defendant's fraud caused the economic loss. *See D.E. & J Ltd. Partnership v. Conaway*, 284 F. Supp. 2d 719, 749-50 (E.D. Mich. 2003); *Emergent Capital Inv. Mgmt. LLC. v. Stonepath Group, Inc.*, 343 F.3d 189, 198 (2d Cir. 2003). The Private Securities Litigation Reform Act ("PSLRA") codified the loss causation

5

element in 10b-5 claims, which provides that a plaintiff:

> shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.

15 U.S.C. § 78u-4(b)(4).

On February 3, 2004, this court denied Defendants' Motion to Dismiss, finding that the HMEPS' complaint adequately pled loss causation. Specifically, the court found that:

> [f]or loss causation to exist, it is *not necessary* that there was a disclosure and that a subsequent drop in market price actually occurred.... Plaintiffs have specifically alleged that they would not have purchased or otherwise acquired their Compuware common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

*In re Compuware Sec. Litig.*, 301 F. Supp. 2d 672, 691 (E.D. Mich. 2004)(internal quotations omitted)(emphasis added)). In so holding, the court relied on *Gary v. First Winthrop Corp.*, 82 F.3d 877 (9th Cir. 1996), which held that:

> [t]he plaintiff must prove not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonable direct, or proximate way responsible for his loss. The causation requirement is satisfied in a Rule 10b-5 case only if the misrepresentation *touches upon* the reasons for the investment's decline in value.

*Id*. at 886 (emphasis added). Consistent with the Ninth Circuit's findings, the court ruled that "HMEPS has sufficiently pleaded that the securities' price was inflated on the dates of purchase due to Defendants' misrepresentations." *In re Compuware*, 301 at 691.

On April 19, 2005, in *Dura Pharmaceuticals, Inc., v. Broudo*, the Supreme Court held that an investor may not establish loss causation by merely alleging that a security's price was inflated at the time of the investor's purchase because of a misrepresentation. 125 S.Ct. 1627; 161 L.Ed.2d 577 (2005). In *Dura*, plaintiffs alleged in their complaint that the defendants' false statements regarding the future FDA approval of a new asthmatic spray device artificially inflated the price of

defendants' stock. In holding that plaintiffs' complaint failed to adequately plead loss causation, the Supreme Court observed:

> [T]he Ninth Circuit's basic reason for finding the complaint adequate, namely, that at the end of the day plaintiffs need only 'establish,' i.e., prove, that 'the price *on the date of purchase* was inflated because of the misrepresentation.'... In our view, this statement of the law is wrong. Normally, in cases such as this one (i.e., fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic loss.... [O]ne might say that the inflated purchase price suggests that the misrepresentation (using language the Ninth Circuit used) 'touches upon' a later economic loss. But, even if that is so, it is insufficient. To 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires.

*Dura,* 125 S.Ct. at 1631-32 (internal citations omitted)**.**

The Supreme Court continued, to adequately plead loss causation, a plaintiff must:

> specify each misleading statement; ... set forth the facts on which [a] belief that a statement is misleading was formed; and ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

*Id. at* 1633 (2005)(citing 15 U.S.C. §§ 78u-4(b)(1), (2))(internal quotations omitted). The statute expressly imposes the burden on plaintiff to prove that the defendant's misrepresentations "caused the loss for which the plaintiff seeks to recover." Section 78u-4(b)(4). Here, HMEPS' complaint failed to allege how Defendants' misrepresentation (or other fraudulent conduct) proximately caused its economic loss. As pled, the complaint would allow for recovery where a misrepresentation leads to an inflated purchase price but nonetheless does not proximately cause an economic loss because all stock had been sold before the allegedly true facts became known.

HMEPS argues that the complaint more than meets the standard set forth in *Dura*. The complaint states that "[a]s a direct and proximate result of Defendants wrongful conduct, [HMEPS] and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period." Further, the

7

complaint alleges that on March 12, 2002, Defendants announced the initiation of litigation against IBM, which had begun to sell software applications in competition with those of Defendants. And on April 3, 2002, the scope of Defendants' misrepresentation with respect to its deteriorating relationship with IBM was revealed as Defendants announced that the company would have a revenue shortfall, requiring a goodwill impairment and restructuring charges in excess of $365 million. (Compl. ¶ 58)

HMEPS' contentions to the contrary notwithstanding, the complaint exhibits the same defective pleading identified by the Supreme Court in *Dura*. First, HMEPS' complaint engages in a thorough exposition of the allegedly false and misleading statements. (Compl. ¶¶ 35-54) Then it alleges that HMEPS purchased the Defendants's stock at an inflated price as a result of Defendants' misrepresentation and suffered a loss (although it had already sold its stock) when the Defendants made an unfavorable earnings announcement. (Comp. ¶¶ 88-89) Wholly absent from its pleadings, however, is a nexus between the misrepresentations of which HMEPS complains and the losses they suffered. Without more, the HMEPS' complaint states that "as a direct and proximate result" (Compl. ¶ 91) of Defendants' conduct HMEPS suffered losses by purchasing Defendants' stock at an inflated rate.

The Court's opinion in *Dura* does not merely require a plaintiff to include the magic words "direct and proximate" in connection with its alleged loss. Plaintiffs must do more than use talismanic language to cure an otherwise inadequately pled complaint. If these allegations met the standard for pleading loss causation, "the mere inclusion of boilerplate language would suffice everywhere and would defeat the requirement that a plaintiff explain how the loss occurred." *D.E.&J. Ltd. P'ship*, 133 Fed.Appx 994, 1000 (6th Cir. 2005). In securities cases, plaintiffs are

8

required to plead a "short simple statement" giving rise to a "strong inference" that defendants' misrepresentations proximately caused its loss–not merely to state that there is a proximate causation between the two. *See Dura,* 125 S.Ct. at 1633; *D.E. & J Ltd. P'ship,* 284 F. Supp. 2d. at 747 (holding that "[i]f the investment decision is induced by misstatements or omissions that are material and that were relied upon by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted").

HMEPS further contends that the causality requirement enunciated in *Dura* is satisfied by pleading that the Defendants' "shares plunged more than 25% in a single day 'as a result of' the corrective announcement regarding [Defendants'] previously concealed eroded software sales" and that the complaint "cites analyst reports which augmented the allegations of a causal connection between the disclosure of a real threat from IBM, eroded software sales, and the precipitous drop in the price of [Defendants'] shares." (Resp. Br. at 9)  Thus, HMEPS asserts that by citing a disclosure that led to a sharp decline in the stock price (even after it had sold all shares) and providing analyst reports purportedly tying the loss to the omission of the IBM competition, it demonstrates the pleading of a causal connection.

As an initial matter, citing analyst reports asserting that there was a causal connection between Defendants' Press Release announcing that the company would take a goodwill impairment and Defendants' misrepresentations, while arguably augmenting HMEPS' allegations, does not satisfy the causal connection pleading requirement enunciated in *Dura*.  Plaintiffs are charged with pleading the connection, listing what it is, thereby giving defendants notice of the losses it alleges.  Further, Defendants' Press Release was not a corrective disclosure because it did not assert that the competition with IBM led to the company taking the goodwill impairment.  In

fact, HMEPS concedes that the March 12, 2002 Press Release, "finally began to disclose to the investing public the truth about [Defendants'] relationship with IBM when it initiated the IBM litigation" (Compl. ¶ 55), nearly a month before the April Press Release announcing the goodwill impairment. *See D.E. & J Ltd. P'ship*, 284 at 748-49, (holding that "[t]he most common 'causal link' pled under this rule [loss causation] is a showing that the plaintiff suffered an economic loss fairly attributable to the public airing of the alleged fraud, i.e., a significant stock price decline immediately following the announcement that reveals the fraud to the public"); *In re Acterna Corp. Sec. Litig.*, 2005 WL 1750268, No. CIV.A. DKC 2002 1131 (D.Md. July 26, 2005)(same). Yet, HMEPS does not allege that a price decline immediately accompanied the March 12, 2002, disclosure, leaving the court to speculate what portion of the loss, if any, should be attributed to the disclosure or whether the loss was caused by other factors. "It should not prove burdensome for a plaintiff who has suffered economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind" *Dura*, 125 S.Ct. at 1634. HMEPS' complaint fails to do so.

*Law-of-the-Case Doctrine*

HMEPS further contends that Defendants' motion for judgment on the Pleadings violates "the-law-of-the-case" doctrine and should not be considered by this court. The-law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *See Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)(quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Because HMEPS' complaint has not been amended, HMEPS argues that the court's order finding in Defendants' original Motion to Dismiss that it pled loss causation should continue to govern at this

10

stage of the litigation.

HMEPS is correct in that the-law-of-the-case doctrine would otherwise apply. However, the Supreme Court makes clear in its holding in *Dura* that a plaintiff must do more than allege that it purchased stock at the inflated price. The law-of-the-case doctrine does not prevent a court from revisiting a prior ruling when a subsequent decision of a superior court contradicts that prior ruling. *See e.g., Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1063 (11th Cir. 1996)(noting that the "law of the case ... does not apply to bar reconsideration of an issue when ... controlling authority has since made a contrary decision of law applicable to that issue"). In addition, "it is not improper for a court to depart from a prior holding if it is convinced it is clearly erroneous." *U.S. v. Certain Land in Detroit*, 188 F. Supp. 2d 747,753 (E.D. Mich. 2002). Failure to dismiss HMEPS' complaint would ignore Supreme Court precedent. Accordingly, Defendants' motion to dismiss the HMEPS' pleading is granted.

**B.     SUMMARY JUDGMENT**

If an investor sells its stock "before the relevant truth beg[i]n[s] to leak out, the misrepresentation will not have led to any loss." *See Dura,* 125 S.Ct. at 1631; *D.E. & J Ltd. P'ship*, 284 at 999; *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003); *Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352, 361-62 (S.D.N.Y. 1999). In fraud-on-the-market cases like this one, purchasing at an inflated price will not itself constitute or proximately cause the relevant economic loss. *See Dura,* 125 S.Ct. at 1631 (holding that "at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value").

11

Here, it is undisputed that HMEPS traded out of Defendants' stock long before the alleged inflated price began to leak out of Defendants' stock price. The Sixth Circuit has held that:

> Because a purchaser may sell the shares quickly before the relevant truth begins to leak out, a seller's misrepresentations (and its associated inflated price) does not inevitably lead to a loss, but rather might mean a later loss. Even if the purchaser later resells those shares at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.

*D.E.&J. Ltd. P'ship*, 133 Fed.Appx. at 999 (internal quotations and citations omitted). Here, HMEPS traded in and out of Defendants' stock (both profiting and suffering losses), but did not own any of Defendants' shares after October 2001, almost five months before Defendants' March 12, 2002, press release; the date HMEPS alleges that the inflated price began to leak out of Defendants' stock price. Therefore, it is undisputed that HMEPS cannot prove that it suffered damages cognizable under the Supreme Court's holding in *Dura*, even if the allegations had been properly pled. Accordingly, Defendant's motion for summary judgment is Granted as no material issues of fact exist as to whether HMEPS owned Defendants' shares once the alleged inflated price began to leak out, or loss causation if it had been adequately pled.

### C.   INTERVENTION & CLASS CERTIFICATION

Butts filed a motion for intervention and for class certification relying upon the same complaint submitted by HMEPS. As stated in section IV(A), HMEPS' complaint is dismissed on the pleadings for failing to plead loss causation. Inasmuch as Butts' motions rely upon the same

defective pleading,[3] his motions for intervention and class certification are fatally defective on their face, as he relies upon a complaint that fails to allege loss causation, and which has been dismissed. Accordingly, Butts' motions for intervention and class certification are Denied as Moot.

### V.
*Order Granting Defendants' Motions to Dismiss and for Summary Judgment, and Denying Butts' Motion for Intervention and Class Certification*

The court having reviewed the file in this matter, having heard oral arguments, and otherwise being fully advised in the premises; now, therefore,

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint on the Pleadings is hereby GRANTED, and Defendants' Motion for Summary Judgment is GRANTED.

**IT IS FURTHER ORDERED** that Butts' Motions for Intervention and Class Certification are hereby DISMISSED AS MOOT.

**IT IS SO ORDERED**.

DATED: September 12, 2005          s/Anna Diggs Taylor
                                   ANNA DIGGS TAYLOR
                                   UNITED STATES DISTRICT JUDGE

---

[3] Butts' motion for intervention states that "[a]part from adding itself as a named plaintiff, Plaintiff does not seek to amend any allegation of the Amended Complaint." (Br. at 5)

Civil No. 02-73793

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing *Opinion and Order* was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on **September 13, 2005**

s/Johnetta M. Curry-Williams
Case Manager